My name is Gil Revis, and I represent the Port of Seattle and Pacific Sound Resources in this case. My plan is to address three issues today. The first, whether PSR has Article III standing. Second, if not, did the trial occur by not remanding the case to state court? Third, was the grant of summary judgment dismissing the Port's claims improper? Now, in order to analyze the issues regarding PSRs, it's important to understand the nature of the transaction that created PSR and the PSR Environmental Trust. The case arises out of historical operations at a wood treating site. In fact, operations started almost 100 years ago. To make a long story short, with the advent of modern environmentalism, PSR, which was then known as the Wyckoff Company, found that it was not possible to continue operating the plant and make a profit. And that situation is not uncommon in environmental cases. It often results in bankruptcy and the creation of water known as orphan sites. Those are the sites where no one is left to pay for the cleanup costs and the taxpayers end up with the tab. In this case, however, PSR had valuable assets, and both EPA and PSR wanted to preserve that asset value and avoid a fire sale, the type that typically or frequently occurs in a liquidating bankruptcy. At the same time that all of this was going on, the Port was interested in expanding its container facility, and the Wyckoff property fit in with the Port's plans. So there were essentially three interested parties to the transaction, first being EPA, which wanted the property cleaned up, second being PSR, which wanted to contribute its assets to the cleanup in exchange for a release of liability. And third, the Port wanted to buy the property and put it back into productive use. So the message of all this, first, is that this is a very complicated transaction. And as you'll notice from the briefs, there are several legal documents that were necessary in order to effectuate this transaction. And I won't go into the details, but those three documents are a Federal consent decree that was approved by Judge Rothstein in 1994. There was a prospective purchaser agreement that protected the Port from liability, and there was an administrative order on consent that told the Port what work had to be performed by the Port at the site. Now, all of these documents were necessary to complete what was essentially a single transaction, and they all refer to each other, they're all contingent on each other, and they're all dependent on each other. Now, the best description of how all these pieces fit together I think you'll find in a June 23, 1994, memorandum from EPA that's found at our record excerpt number seven. Now, PSR's role at the end of this transaction is not all that unusual, even though the district court seemed to indicate that this was a one-of-a-kind. It's really not that unusual. Essentially what the agreements created was a liquidating trust that authorized the trustee to shut down the business and to dispose of all the assets and to deliver the proceeds from that disposition to the company's creditors. And the company's creditors in this case were, by and large, EPA and the Natural Resource Damage Trustees, which is NOAA and two Indian tribes. But the trust is not a party to this case as it reaches us. Is that true? I'm sorry, Your Honor? Is the trust a party to the case as it reaches us? Yes, the trust is not, Your Honor. And the reason for that is we believe the party that sustained the injury was PSR because the assets belonged to PSR. And the assets were what were sold or liquidated in order to pay the money to EPA. So even though the trust was in between PSR and EPA, it's really PSR's assets and PSR's claim in our view. Even though they legally can't end up with it at the end? Even though they can't legally what? I'm sorry? End up with the money at the end. That's correct. And I'll address that issue in just a minute. I think under the case law that doesn't make any difference. And there aren't many cases which I think you'll notice, but the primary case that establishes our right to have standing or PSR's right to have standing is the D.C. Circuit's decision in the APCC case, which was essentially very much like this case because there was one primary difference, which was the plaintiffs in that case had received an assignment which allowed them to pursue claims on behalf of a third party. Now, like this case, in that case, the plaintiffs had to turn over all the money they got to the third party. So the issue was functionally the same as what we have here. The defendants raised the same argument, which was there's no Article III standing here because the plaintiff will not personally benefit from the recovery because the money goes to someone else. And the D.C. Circuit said that's not a failure of Article III standing. The plaintiff has, in this case, a concrete and particularized injury, which the district court recognized. And the district court also said the second prong of Article III standing, which is some causal effect to the defendant's conduct, was also met. But the issue the district court said defeated Article III jurisdiction was a redressability issue. We believe that the court erred in ruling that this injury was not redressable. And I think the brief addresses this pretty well, but it's fairly simple in our view, and that is what you'll find is most of the standing cases that are reported deal with claims against the government, government action, or with claims attempting to get an injunction. They don't deal with money claims or money damages. And what the courts have said, and we've cited a number of these cases in our brief, is that a claim for money damages is redressed by a money judgment. And that's essentially the end of the story for a lot of the standing cases that have raised this issue, that it's simply the injury is the lack of money. The judgment that pays the money back to the plaintiff redresses that. Under your multiple contract arrangement, PSR obviously is still in existence. What's the status? Suppose that it collects and pays over. Does it provide that it goes out of existence? Yes. There is a attached to the consent decree there is a trust agreement. There's also a liquidation plan. Okay. Does the liquidation plan provide for winding up in some fashion? Yes, it does. And it says that it's supposed to be wound up in accordance with Washington State law. Now, the reason why PSR still exists is that all of the assets haven't been liquidated. And the one remaining asset is, in fact, this claim against Burlington Northern. So the plan, as we know it now, is that as soon as this case is concluded, that that will be the trigger for liquidation of PSR and the trust will no longer have a function. So the next question after whether or not PSR has standing is, since the district court concluded that it did not, what was the remedy that was appropriate? And the statute is clear. It's 28 U.S.C. 1447C. And it says that in a case that's removed from State court, if the Federal court determines that it lacks jurisdiction, the case shall be remanded. The trial court actually recognized that as a mandatory directive, but declined to remand because it thought that remand would be futile. And that's where one of the issues in this case comes from. The trial court also recognized that virtually every court, circuit court in the country, has rejected the futility exception because it's inconsistent with the mandatory language of the statute. However, the Court expressly felt bound by this Court's decision to Bell v. The City of Kellogg, which did recognize a futility exception. In the trial court's decision, Judge Lassnick stated that the Court will not address substantial questions raised by other circuits as to the validity of a judicial exception to the plain meaning of a clearly written statute. And our position here is exactly that. This is a clearly written statute. It has a plain meaning. It's mandatory. So the futility exception has no place. The second reason why I believe the futility exception should not be recognized any longer is because of the Supreme Court's decision in the International Primates Protection League case. In that case, the Court specifically said 1447C is mandatory, which in effect removes any basis for a futility exception. This Court has also not directly declared that, but the Court in the Bruns v. National Credit Administration case agreed. 1447C is mandatory, did not mention the Bell case, but cited a Seventh Circuit case, and in the parenthetical description of that case, this Court stated that remand is required, even if it would be futile. So we believe that, in effect, the Ninth Circuit has gone away from the Bell case, and what we are suggesting is that it explicitly recognized that there is no longer a futility exception to 1447C. Now, the policy behind that, I think, is the following. Counsel, before you run out of time on this second issue, I'd like to hear from you about the summary judgment question. And in particular, what is the material issue of fact that remains? I'll go ahead and jump to that then, Your Honor. We believe there are a number of material issues of fact, and they all stem from the question of whether the Port was reimbursed with PSR's money or whether the Port was reimbursed with its own money. And in order to resolve that question, you have to look at, in our view, all of the contracts that I talked about, all of the agreements, and see how they interrelate. And what the trial court did is look only to the purchase of sale agreement, to the exclusion of all those documents that expressly reference each other. And we believe that's inconsistent with Washington law and the Byrd case, that you have to consider all of the evidence that could lead to an interpretation of the party's intent. What specifically could the parties intend that is in contradiction with the purchase and sale agreement? If you read, for example, the Port's agreements with EPA, they specifically require the Port to spend $16.2 million of its money to clean up the site. Well, if the $9 million is paid to PSR, then the Port is never going to reach that $16.2 goal. So what that tells me is that the parties intended for this to be the Port's money that the Port is spending on cleanup, even though the money is being held by the PSR Trust. Now, the reason why that makes sense is because EPA wanted to have control over those funds that are being used for cleanup, so they deposit it in the Trust, where they're the beneficiary, and they have control over what the trustee does. Why did they call it the purchase price? Well, there are a number of reasons. Again, I think these are explained in some of the factual issues that we think the trial court should have considered. There was a need in terms of EPA's and the Port's reasons to have a monetary figure attached to the purchase of the property, because otherwise it would look like a gift of public funds to the Port because they got a piece of property for free, even though the evidence shows that the deposit was worth less than zero. It's considerably more emphatic than that. If you read the whole agreement, it's not just a pro forma agreement. It has all the usual indicia of sale. It has a quick timeline, and it says we're doing this in lieu of eminent domain. We want title to this property, and if this falls through, we'll condemn the property in a taking. I guess I have trouble seeing why a sale isn't a sale. Well, Your Honor, I think the only reason I can give for that is I believe the Berg case requires that, and that they have to consider the totality of the circumstances. There's a lot of evidence that's extrinsic to these various transactions that's not contained in a personal sale agreement. Was the whole 9 million used? Yes, it was. Did it have to be under all the agreements? That's the way the agreement's read. The Port will spend up to 16.2 million. Well, that's what I wondered. If they had spent less, who gets it? Who gets the balance? If they didn't spend it, of course, I think now they have spent it all. But if they did not spend that entire amount, that that would be retained by the trust. That suggests it's not the Port's money. You know, that is one interpretation, Your Honor. I think we believe that there are countervailing facts that indicate that it is, in fact, still the Port's money, and that's what we think the Berg case should allow the trier of fact to consider. Thank you. Even though we used up all of your time with some questions, we'll restore a little bit for rebuttal when the time comes. And we'll hear from Mr. Berg. Good morning, Your Honors. I'm John Berg. I represent BNSF Railway. May it please the Court, I would like to start sort of where Mr. Revis left off, and that is with the claim that this was the Port's money. He has really offered no basis either in his briefs or in argument for that, and he said that Judge Lasnik, the district court judge, looked only to the purchase and sale agreement. That's not correct. Judge Lasnik, on page 9 of his summary judgment order, described the purchase and sale agreement, the prospective purchaser agreement, the administrative order on consent issued by EPA, and the consent decree. He covered all of those in page 9 and on to page 10. By and large, those other documents that Mr. Revis says that Judge Lasnik should have looked to relate back to the purchase and sale agreement. The purchase and sale agreement couldn't be clearer that this property was being treated like any other asset of PSR. PSR had a parking lot. PSR had commercial buildings. PSR had this plant. All of those assets were liquidated and the money placed into the trust, and the trust document states that it is for the benefit of EPA, for its super fund and for the tribes. It's not for the benefit of the Port. There is simply not a shred of evidence in the record that the trust was some sort of escrow for the Port. I'm happy to answer any other questions Your Honors may have about that before I turn to the issue of PSR and its standing or lack thereof. Just one question. To make a tribal issue a fact, do you have to have an ambiguity in the documents? Well, I mean, they're arguing that you have to, that some prior fact ought to decide whether or not this was really the Port's money or not. I just wonder, when does an issue of fact arise? Well, Your Honor, the, of course, Judge Lasnik found there was no issue of fact that precluded summary judgment. The evidence in the written record was, was uncontradicted, except by a declaration from a Port officer who said, gee, I always thought it was our money. Well, his, of course, his subjective viewpoint cannot be used to contradict the documents. So I think the answer is that Judge Lasnik's interpretation of the consent decree and the, and the contract documents is entitled to some deference by this Court. Now, the, the argument about PSR's standing, Judge Graber asked, I think, exactly the right question. Does PSR trust a party? And if not, why not? PSR trust is not a party, and yet it would be the beneficiary, I guess, for a while of, of any recovery that PSR might achieve. But PSR still achieved, it still exists, correct? It does still exist. Okay. But it exists, Your Honor. And it is the, it is the entity that initially was damaged, or allegedly was. Well, the... The trust didn't exist at the time that the problems arose, right? Your Honor, the problems arose in the 80s. And at that time, PSR was known as the Wyckoff Company. Right. But the trust didn't exist, is my point. The trust did not exist at that time. This other company existed.  The difficulty I have with your side of the argument is it suggests that we ought to care as a matter of law what happens to money that a party recovers if it can recover that money. And it strikes me that that's really problematic in a context, for example, of, let's say, a person who is in bankruptcy and there's been a lifting of the stay and allows them to go proceed with a claim they may have against someone. And it may be that if they recover, 100 percent of it is going to go to their creditors in bankruptcy. But they still have standing to pursue their claim, even though they may never see a penny of it. Well, I think... Why do we care what happens to the money? Well, I think we care because of the issue of standing, Your Honor. And I realize that there... That's circular. That doesn't really answer why we should ever pay any attention. Why shouldn't we just put blinders on and say, do you have a claim in the normal sense and are you asking for money for that claim? End of discussion. Well, Your Honor, I think in terms of standing, the question is, is PSR a representative like a bankruptcy trustee of an estate? Is PSR an assignee? There's no assignment document. Is PSR acting as an executor, an administrator, a guardian? Are they acting in some representative capacity recognized, for instance, in Rule 17? They're acting for themselves, is what they say in the claim. They say they're acting for themselves. Exactly, Your Honor. And so what happens if they recover anything from us? Why do we care what happens? If the complaint is for money to be paid to them and it's a legally cognizable kind of injury, it doesn't say, you know, because the sky is blue, I want your money. But there's an injury and they want money. Why isn't that the end of everything? Well, Your Honor, because it's not their claim to bring. EPA is funding the cleanup with money that's been accumulated in the trust. EPA is directing the cleanup. PSR hasn't spent a penny in the settlements, just as an aside. And the reason that they went out of business had nothing to do with whether they could make a profit. Doesn't that go to the merits of whether they can recover? If they can't prove that they were injured, maybe they lose the case. It does, Your Honor. I was just providing a little background for it. But, Your Honor, if they don't have – if any recovery from BNSF or any other party couldn't possibly redress the injury that PSR claims, then I think Judge Leisnick got this right. And under the circumstances we have here, they don't have standing. I don't think that it's necessary, Your Honor, to create a rule that courts must always look past money to find out what the creditor, the plaintiff would like to do. I'm asking the opposite. Why shouldn't we have a rule that says we can never look beyond it? Well, I think for purposes of standing, Your Honor, to determine whether any order from the district court could redress the injury claimed, I think it's essential. Well, why can't we view – you said that PSR had not spent a penny on remediation. But why can't we say it had to because of the looming costs of reclamation of this environmental harm? They had to give all their assets to the trust. I mean, why isn't that, at least indirectly, a payment for reclamation? Your Honor suggests that that is the harm that would be redressed. That's my suggestion, yes. And I agree with Your Honor. I think that is the harm. I think the harm was that they had to – they, PSR, had to liquidate all their assets into a trust in order to protect themselves from further environmental liability from the Federal Government. They had already been prosecuted criminally for violating RCRA and the Clean Water Act. And they wanted to be rid of it. So would any order from Judge Lasnik redress that harm? If the money is being paid to PSR, which simply is a conduit, it would have to turn it right over to the trust for EPA's use. It would not remedy that injury suffered by PSR, the injury being forced to liquidate and give up all of their assets. But, I mean, often when a corporation liquidates, it may get rid of a lot of its assets, but it remains as a shell and it pursues its debtors. And it may have outstanding accounts and it sues even though it's liquidating And it won't be able to keep the money? It's just going to go somewhere else? I'm a creditor. Your Honor, I think this is distinguishable from that. I thought about that, the fact that a party could be seeking to collect money to pay over to creditors. That's not our situation here. It's not like there is a debtor-creditor relationship between PSR and the trust or PSR and EPA. There is no obligation on the part of PSR to pursue claims. They are just doing it for their own reasons. Well, wasn't the consent decree say that they should try to maximize the available funds? In terms, I think, Your Honor, of selling their assets and having a marketing plan that was all of that kind of stuff in terms of selling assets. But certainly, certainly the consent decree did not, as Mr. Revis might suggest, deputize PSR, have EPA deputize PSR to go out, you know, on behalf of EPA and collect money. You're actually making their argument for them because they're not trying to be somebody else's deputy. They actually want to collect the money. But, Your Honor, they're a nonprofit company. They achieved that in 1997, retroactive to 1994. And there's the record, I think, is crystal clear that any money that they recover has to go right over to the trust. EPA is the beneficiary of whatever, whatever PSR does. And yet there is no representative capacity, if you will. And that distinguishes this case from all of the others, the ASINI cases, the 17, Rule 17a cases and so on. Can they be subrogated to the rights of the trust or even of EPA because of the payment of their assets over to the? Your Honor, I think, I think if EPA were to seek, if EPA wants money from BNSF, if it thinks it has some theory under CERCLA, it would have to do it. But I don't think PSR can do it for EPA. And I think both of them missed the boat under CERCLA. The consent decree was worked out under CERCLA, which afforded any party that resolves its liability with the government in a judicially supervised consent decree to file contribution claims within three years of that consent decree. And no party did that. So I'm kind of running out of time here. I wanted to address for just a moment the remand issue, the argument that the court was obligated to remand once it found no standing on the part of PSR. Does Your Honor's wish argument on that? Well, the minute is yours to use as you wish. I don't think we have any questions at the moment. Okay. This Court addressed this issue in two cases that I think don't directly apply, but the principles in them control the outcome of the case. One I'm probably mispronouncing, and it's called Albingia. It's referred to in the brief. The other is Lee. In Albingia, a case from Judge Patel, the court ruled that the basis for removal jurisdiction, which was the Warsaw Convention, was inapplicable, leaving some State claims over which she had jurisdiction under 1367. The plaintiffs urged remand. She had ruled that she ruled on the merits with respect to the State claims. This Court said that remand was not required, that it was within the discretion of the trial court to decide whether to remand. The court reconciled the shall be remand provision of 1447 with the may decline to jurisdiction language of 1367 by affording the district court discretion to exercise supplemental jurisdiction over the State claims, even though the basis for removal jurisdiction was lost. Albingia was not a diversity case. In the Lee case, Lee v. American National Insurance Company, that's also discussed in the briefs, the remand question came up in a diversity case. In Lee, this Court framed the question as whether the entire case must be remanded if the plaintiff lacks standing as to some defendant and some claims. And that's kind of our situation here. And the answer is no. I think the 1447 mandatory remand language has to apply where the basis for removal jurisdiction, in our case diversity, is found to be lacking. If the court determines upon removal, looks at the case and determines there is no diversity, 1447 applies. It must remand. I don't think it applies to bar a district court from making a standing determination where the court also finds that diversity does exist. Thank you, counsel. You've exceeded your time, but we appreciate the argument on the final point as well. I apologize. And, Mr. Revis, you have a bit of time remaining, not much, but we'll give you a little bit here. Your Honor, I'm at your mercy now. Would you like me to make a presentation? I thought you said that you had some questions. No. All I was saying was we had used up some of your time with questions, so we were going to give you a little extra. I didn't make that clear, I guess. Well, let me address a few things then. First, the issue of the trust not being a party. You have to think about what BNSF is arguing here. They say, number one, PSR does not have Article III standing because they passed the money through the trust. Well, it seems to me that's the same argument they would make against the trust if the trust were a party, because the trust passes the money to EPA. Now, as we pointed out in our brief, and a footnote in one of the briefs in the trial court, BNSF said, well, EPA doesn't have a claim here because EPA has been fully reimbursed. So what that means, if you buy the logic of their argument, is this claim entirely disappears. And the $11 million or so that was spent on remediation of this site is not recoverable from anybody. So I think that's a fatal flaw there. I think the point about this being a normal debtor-creditor relationship is the correct one. The consent decree does require PSR to pursue these claims, to maximize the assets. And that's why, one of the reasons why it has a stake in the outcome of this case is because it's legally obligated under a federal consent decree to do this. And so I don't think that the allegation that PSR has no stake in this case really makes any sense. And Judge Leiser didn't find that either. Our view on the injury is that PSR is not suing because it had to enter into the consent decree. That's what Judge Leisnick said the injury was. We believe the injury is PSR had to pay more than its fair share of cleanup costs. And that gives PSR a claim for contribution under State law, the Model Toxics Control Act. And that's true even though it was also a wrongdoer or potentially a wrongdoer. That's correct. What it does in these cases, as you may know, is allocates the liability among all the parties. So we're not saying that BNSF is liable for the entire amount, but we are saying that we have a legitimate claim to have the trier of fact determine, the court actually, determine what share each party should bear. Thank you, counsel. We appreciate the arguments of both parties. And the case just argued is submitted. Are you okay with attention now? I am. We're going to take about a ten-minute break, and then we'll return for restricted category.
judges: Canby, Graber, Gould